FILED
CLERK

3:30 pm, Mar 11, 2019

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
DEBORAH TAPERELL,

                        Plaintiff,

     -against-

TEGAN LIGHTING, INC., RENEE GREEN
and JAMES PRIOR,

                        Defendants.
--------------------------------------------------------X

**ORDER**
18-CV-3343 (SJF)(ARL)

FEUERSTEIN, District Judge:

        Pending before the Court are the objections of plaintiff Deborah Taperell ("plaintiff") to

the Report and Recommendation of the Honorable Arlene R. Lindsay, United States Magistrate

Judge, dated February 6, 2019 ("the Report"), recommending that the motion of defendants

Tegan Lighting, Inc. ("Tegan" or the "Company"), Renee Green ("Green") and James Prior

("Prior") (collectively, "defendants") seeking to dismiss plaintiff's claim against them under the

New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290, *et seq.*, for gender

and pregnancy discrimination pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

be granted. For the reasons set forth below, plaintiff's objections are sustained to the extent set

forth below and the Report is respectfully rejected.


I.       Discussion

    A.      Standard of Review

        Any party may serve and file written objections to a report and recommendation of a

magistrate judge on a dispositive matter within fourteen (14) days after being served with a copy

thereof. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Any portion of such a report and

recommendation to which a timely objection has been made is reviewed *de novo*. 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72(b)(3). The court, however, is not required to review the factual findings or legal conclusions of the magistrate judge as to which no proper objections are interposed. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985). To accept the report and recommendation of a magistrate judge to which no specific, timely objection has been made, the district judge need only be satisfied that there is no clear error apparent on the face of the record. *See* Fed. R. Civ. P. 72(b); *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 174 (2d Cir. 2000) (a court may review a report to which no timely objection has been interposed to determine whether the magistrate judge committed "plain error.") Whether or not proper objections have been filed, the district judge may, after review, accept, reject, or modify any of the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

B.      Objections

Plaintiff contends, *inter alia*, that the Report is erroneous: (i) in "fail[ing] to consider critical factual allegations in the Amended Complaint . . . [indicating] that [her] Great Neck, New York home office was the situs of her employment or regular workplace[,]" (Plaintiff's Objections to the Report ["Plf. Obj."] at 2); (ii) in "stat[ing] that the 'only question remaining is whether the NYSHRL[] extends to cover New York residents who maintain a home office in New York, where the alleged discriminatory conduct occurs elsewhere [sic][,]'" (*id.* at 2) (quoting Report at 5)[1]; (iii) in relying upon the case *Meyers v. Medco Health Sols., Inc.*, No. 09-cv-9216, 2012 WL 4747173 (S.D.N.Y. Oct. 4, 2012), *reconsideration granted in part on other*

---

[1] The Report actually states that "the only question remaining is whether the NYSHRL extends to cover New York residents who maintain a home office in New York, where the alleged discriminatory conduct *took place outside of New York*." (Report at 5) (italics added to emphasize discrepancy in language).

*grounds*, 2015 WL 1500217 (E.D.N.Y. Mar. 31, 2015), and distinguishing three (3) of the cases upon which plaintiff relied, *Curto v. Medical World Commc'ns, Inc.*, 388 F. Supp. 2d 101 (E.D.N.Y. 2005), *Downey v. Adloox Inc.*, 238 F. Supp. 3d 514 (S.D.N.Y. 2017), and *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345 (S.D.N.Y. 2007); and (iv) in finding that plaintiff "never performed any duties in New York," (Report at 7), since the amended complaint alleges that she "'began scheduling and meeting with the Company's independent sales agents who were located in the New York/New Jersey market' *before* she ever traveled to California for training." (Plf. Obj. at 3) (emphasis in original) (quoting Amended Complaint ["Am. Compl."], ¶ 42 and citing *Id.*, ¶ 43).

Upon *de novo* review of the Report, all motion papers and the operative pleadings, and consideration of plaintiff's objections to the Report, and defendants' response thereto, the objections are sustained to the extent set forth below and the Report is respectfully rejected.

Initially, plaintiff's reliance on *Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 907 N.Y.S.2d 145, 933 N.Ed.2d 744 (2010), is misplaced. In *Harte v. Woods Hole Oceanographic Inst.*, 495 F. App'x 171 (2d Cir. Sept. 7, 2012) (summary order), which, like this case, involved a claim by a New York resident that she was discriminated against outside of New York by non-resident defendants, the Second Circuit expressly rejected the plaintiff's reliance upon *Hoffman* on the basis that *Hoffman* "considered a different question, namely whether a *non-resident* of New York who also does not work in New York may sue under the [NYSHRL] for an adverse employment decision made in New York." *Harte*, 495 F. App'x at 172 (emphasis in original). For the same reason, plaintiff's reliance on *Downey*, 238 F. Supp. 3d at 524-25, (Plf. Obj. at 10), which also involved a non-resident plaintiff, is likewise misplaced.[2]

---

[2] Indeed, Section 298-a of the NYSHRL, which determines the applicability of the NYSHRL to certain discriminatory and retaliatory acts committed outside of New York, is explicitly addressed to acts committed outside

The Report correctly indicates that the NYSHRL "does not provide a private cause of action to New York residents discriminated against outside of New York by foreign corporations." *Harte*, 495 F. App'x at 172 (quoting *Sorrentino*, 302 A.D.2d 240, 240, 755 N.Y.S.2d 78); *see also Wait v. Beck's N. Am., Inc.*, 241 F. Supp. 2d 172, 178 (N.D.N.Y. 2003) ("[C]ourts have held that N.Y. Exec. Law § 298-a(3) only provides an administrative remedy for discriminatory acts committed outside the state by non-resident defendants." (citing cases)). However, "[t]he entire [NYSHRL] . . . applies to any claimed discriminatory practice by [defendants] that occurred within New York, even though [defendants] [are] a foreign corporation [and non-resident individuals]." *Sherwood v. Olin Corp.*, 772 F. Supp. 1418, 1425 (S.D.N.Y. 1991). "In order to allege discrimination within New York, [the plaintiff] must allege more than her New York residence; she must allege that an unlawful discriminatory practice 'originated' within New York state, . . . that a discriminatory practice affected the 'terms, conditions, or privileges of [her] employment' ([N.Y. Exec. Law] § 296(1)(a)) within New York, or that [defendants] retaliated against her because she complained about such discriminatory practices."[3] *Sherwood*, 772 F. Supp. at 1425-26 (quotations and citation omitted); *see also Wilcox v. PRC of N.Y. L.P.*, No. 95-cv-1292, 1997 WL 141682, at * 5 (N.D.N.Y. Mar. 24, 1997)

of New York "against a resident of this state or against a corporation organized under the laws of this state or authorized to do business in this state." N.Y. Exec. Law § 298-a(1). Thus, as in *Harte*, and the case upon which it relied, *Sorrentino v. Citicorp*, 302 A.D.2d 240, 240, 755 N.Y.S.2d 78 (N.Y. App. Div. 2003), Section 298-a of the NYSHRL is applicable to this case. However, it is not applicable to claims of discriminatory acts committed outside of New York against non-residents, such as those involved in *Hoffman* and *Downey*. *See Iwankow v. Mobil Corp.*, 150 A.D.2d 272, 273, 541 N.Y.S.2d 428 (N.Y. App. Div. 1989) (holding that Section 298-a of the NYSHRL does not extend "to discrimination against a non-resident which occurs outside the state, given the legislative history of the 1975 enactment[,] . . . [indicating] that the new section was intended 'to extend the whole article extra-territorially so that it applies to acts committed outside the state by state residents and non-residents alike *against state residents*.'" (emphasis in original) (quoting Bill Jacket, L.1975, ch. 662, § 2)).

[3] The NYSHRL defines the term "unlawful discriminatory practice" to include, *inter alia*, the practices specified in Section 296 of that statute. N.Y. Exec. Law § 292(4). As relevant here, Section 296(1)(a) of the NYSHRL provides that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of an individual's . . . sex . . . to discharge from employment such individual or to discriminate against such individual . . . in terms, conditions, or privileges of employment." N.Y. Exec Law § 296(1)(a).

("The test set forth in *Sherwood* for determining whether the discrimination occurred in New York is written in the disjunctive, not in the conjunctive . . . . Thus, a plaintiff need not allege that the discrimination originated in New York if she alleges . . . that the discriminatory practice affected the conditions of her employment in New York.")

Although it is undisputed that plaintiff is a New York resident, that defendants are non-residents, and that the amended complaint does not allege that "an unlawful discriminatory practice originated within New York State, . . . or that [defendants] retaliated against [plaintiff] because she complained about . . . discriminatory practices[,]" *Sherwood*, 772 F. Supp. at 1425-26 (quotations and citation omitted), the factual allegations in the complaint are sufficient to support a plausible inference that the "'terms, conditions, or privileges of [plaintiff's] employment' . . . within New York," *Sherwood*, 772 F. Supp. at 1426 (brackets in original) (quoting N.Y. Exec. Law § 296(1)(a)), were affected by an unlawful discriminatory practice of defendants, *i.e.*, their termination of plaintiff's employment in New York purportedly because of her sex and pregnancy. *Cf. Gue v. Suleiman*, No. 10-cv-8958, 2012 WL 4473283, at * 7 (S.D.N.Y. Sept. 27, 2012), *appeal dismissed*, No. 13-112 (2d Cir. Apr. 25, 2013) (finding that the conditions of the plaintiff's employment were "altered for the worst" by the loss of his employment). Specifically, the amended complaint alleges, *inter alia*, that plaintiff was employed by Tegan "as its New York based East Coast Regional Sales Manager located in Great Neck, New York, . . . to work out of her home in Great Neck, New York[,]" (Am. Compl., ¶¶ 16, 18); that the home office "was established with Defendants' active assistance, approval, endorsement and imprimatur[,]" (*id.*, ¶ 19); that the Company "supplied and/or was preparing to supply [her] with equipment to maintain her home office . . . [and] was obligated to reimburse [her] for the expenses associated with maintaining her home office," (*id.*, ¶¶ 23-24); that "Tegan

printed and distributed for Plaintiff's use business cards entitled 'Deborah Taperell East Coast Regional Sales Manager Great Neck, NY', which contained her New York telephone number[,]" (*id.*, ¶ 21); that "Tegan's business records reflected Plaintiff's business address as being located in Great Neck, New York[,]" (*id.*, ¶ 22); that "as part of her job duties, Plaintiff was required to visit Tegan's largest New York clients at least 2-3 times per week every other week[,]"[4] (*id.*, ¶ 20; *see also id.*, ¶ 40); that Green and/or Prior "[m]anaged and supervised Plaintiff's home office in Great Neck, New York . . . [and] [h]ad daily operational contact with Plaintiff at her home office in Great Neck, New York via telephone, e-mail and other means[,]" (*id.*, ¶ 37); that Green and/or Prior required her "to attend weekly 'meetings' with Green from her home office . . . via video conferencing . . . [and] to remotely report on a regular basis to [them] from her home office . . . via telephone, e-mail and other means[,]" (*id.*; *see also id.*, ¶ 39); that plaintiff "commenced her employment on or about July 5, 2017 and began scheduling and meeting with the Company's independent sales agents who were located in the New York/New Jersey market[,]" (*id.*, ¶ 42); that "[o]n or about July 9, 2017, [she] traveled to the Company's headquarters in San Rafael, California to meet with Green and other Company officials, and to receive additional training as part of the on-boarding process[,]" (*id.*, ¶ 43); that on or about July 11, 2017, approximately one (1) week after she commenced her employment with defendants, she disclosed her pregnancy to Green, (*id.*, ¶¶ 2, 45); that Green "immediately reprimanded [her] for accepting employment with the Company knowing that she was pregnant[,]" (*id.*, ¶ 2; *see also id.*, ¶ 46); and that approximately twelve (12) hours after she disclosed her pregnancy to Green, her employment was terminated "and the Company sent [her] back to New York." (*Id.* ¶¶

---

[4] The amended complaint also alleges that "the Company advised Plaintiff that every other week (or roughly 50% - 60% of her work time), she would be expected to meet with the Company's independent sales agents and customers in areas such as Connecticut, Florida, Maine, Massachusetts, Missouri, North Carolina, Pennsylvania, South Carolina, Toronto, Vermont, Virginia and Washington, D.C." (Am. Compl., ¶ 40).

2, 49). Accordingly, the amended complaint alleges "more than [plaintiff's] New York residence," *Sherwood*, 772 F. Supp. at 1426; *cf. Harte v. Woods Hole Oceanographic Inst.*, No. 10-cv-3916, 2012 WL 12951525, at * 5 (E.D.N.Y. Jan. 6, 2012), *aff'd*, 495 F. App'x 171 (2d Cir. Sept. 7, 2012); it asserts sufficient factual allegations from which it may reasonably be inferred that plaintiff was employed in New York and that the terms, conditions and privileges of her employment in New York were affected, indeed entirely lost, by defendants' allegedly discriminatory conduct in terminating her employment because of her sex and pregnancy.

The *Meyers* case, upon which the Report relies, is distinguishable. In that case, the plaintiff was employed in New Jersey, but regularly worked at least one (1) or two (2) days a week from her New York residence, and the discriminatory acts of which she complained were all performed in New Jersey. *Meyers*, 2012 WL 4747173, at * 1-2, 5. The court held, in relevant part, that "[t]he mere fact that plaintiff resided in New York, and may have periodically worked from home, is not sufficient to warrant the application of New York law." *Id.* at *5. Unlike that case, the amended complaint in this case plausibly alleges that plaintiff was hired expressly to work from her home and, thus, was employed in New York. Although plaintiff may have been required to travel approximately fifty percent (50%) to sixty percent (60%) of her work time, there is no indication in the pleadings that she was employed anywhere else but New York, *e.g.*, that she would report to work or regularly work anywhere else but her home office in New York that defendants allegedly helped her to establish and maintain. Accordingly, the *Meyers* case is inapposite.

Indeed, it seems beyond cavil that if defendants had hired plaintiff to perform the same duties from a traditional office that they maintained in New York, instead of from a home office in plaintiff's residence, plaintiff would be deemed to have been employed in New York, such

that the termination of her employment would have affected the terms, conditions and privileges

of her employment within New York. The result should be no different merely because plaintiff

worked out of an office in her New York residence instead of an office in the traditional sense,

particularly in light of allegations, *inter alia*, that the home office was established with

defendants' assistance and approval, and that the Company supplied or was preparing to supply

plaintiff with equipment to maintain it and was obligated to reimburse her for the expenses

associated with maintaining it. *See Curto*, 388 F. Supp. 2d at 107.

Although, as indicated in the Report, the NYSHRL claim in *Curto* was based upon the

defendants' allegedly ongoing harassment and discriminatory conduct, *Curto*, 388 F. Supp. 2d at

107, instead of just the discrete act of termination, (*see* Report at 6), that is a distinction without

a difference. The *Curto* court did not hold, as stated in the Report, that in order to find "that

working from a home was a sufficient nexus to New York to allow an action to proceed, . . . the

[p]laintiff must allege that the discriminatory conduct has made her job in New York more

difficult to perform." (Report at 6) (quotations and citation omitted). Rather, the court held, *inter

alia*, that "a plaintiff need not allege that the discrimination originated in New York if she alleges

. . . that the discriminatory practice affected the conditions of her employment in New York[,]"

*Curto*, 388 F.Supp.2d at 107 (quoting *Wilcox*, 1997 WL 141682, at * 5), and found that, like

*Wilcox*, the discriminatory practice alleged by the plaintiff, *i.e.*, that the defendants' "harassing

and discriminatory conduct ha[d] made her job in New York more difficult to perform," was

sufficient to rebut the defendants' argument that her NYSHRL claims were barred, irrespective

of the fact that the plaintiff worked at a home office instead of in a traditional office. *Id.*

(quotations and citation omitted). The *Curto* court also rejected the defendants' proposition "that

just because [the plaintiff] worked out of her home in New York, her work conditions were not

affected within the ambit of the NYSHRL."[5] *Id.* Nothing in that case, or any other case found by this Court, holds that the applicability of the NYSHRL depends upon the nature or scope of the discriminatory practice alleged. Rather, what matters in cases where, as here, the allegedly discriminatory practice did not originate in New York, is whether the discriminatory practice affected the conditions of the plaintiff's employment in New York.

Likewise, *Int'l Healthcare* is not inapposite merely because the plaintiff, who worked out of a home office in New York City when she was not traveling for the defendant-employer, *Int'l Healthcare*, 470 F. Supp. 2d at 352-53, claimed that "her work in her home office was impacted by the nature of her assignments and the impact was felt in New York," (Report at 7), and, thus, alleged an ongoing discriminatory practice instead of a discrete act of discrimination. In that case, the court held that since the allegedly discriminatory practice, *i.e.*, the purportedly disparate treatment of the plaintiff with respect to her work assignments during the course of her employment, "affected the terms and conditions of [her] employment at her workplace in New York City, her claims . . . [fell] within the scope of the NYSHRL." *Id.* at 362.

Since the amended complaint plausibly alleges that the unlawful discriminatory practice at issue, *i.e.*, defendants' termination of plaintiff's employment allegedly because of her sex and pregnancy, affected the terms, conditions and privileges of her employment in New York, it states a plausible NYSHRL claim, irrespective of the fact that plaintiff worked from a home office in New York instead of in a traditional office, or that the alleged discriminatory practice was a discrete act instead of an ongoing pattern of harassment and discriminatory conduct.[6]

---

[5] The defendants in *Curto* contended that "their alleged discriminatory conduct [did] not fall within the reach of *Sherwood* or *Wilcox* because to the extent it affected [the] [p]laintiff's employment in New York, it did so at her *home* where she worked, as opposed to an office in the traditional sense where [she] had to interact with other employees." *Curto*, 388 F. Supp. 2d at 106-07 (emphasis in original).

[6] Moreover, contrary to the Report's finding that plaintiff "never performed any duties in New York," (Report at 7), it may reasonably be inferred that plaintiff performed some duties in New York from her allegation that upon the

Accordingly, defendants' motion to dismiss plaintiff's NYSHRL claim against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is denied in its entirety.

II.      Conclusion

For the reasons set forth above, plaintiff's objections are sustained to the extent set forth herein, the Report is respectfully rejected and defendants' motion to dismiss plaintiff's NYSHRL claim against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is denied in its entirety.

SO ORDERED.

_____/s/_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: March 11, 2019
        Central Islip, New York

---

commencement of her employment, and before she traveled to California for training, she "began scheduling and meeting with the Company's independent sales agents who were located in the New York/New Jersey market." (Am. Compl., ¶ 42).